UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| I.G. *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>LINDEN CITY BOARD OF EDUCATION,<br><br>        Defendant. | Civil Action No. 20-12761 (SDW) (LDW)<br><br><br>**OPINION**<br><br><br>June 8, 2021 |

**WIGENTON,** District Judge.

Before this Court is Plaintiffs I.G. and I.G.'s ("Plaintiffs") Motion for Summary Judgment (D.E. 16) on behalf of their daughter, E.G., pursuant to Federal Rule of Civil Procedure ("Rule") 56, and Defendant, Linden City Board of Education's ("Defendant") Cross-Motion for Summary Judgment (D.E. 19) pursuant to Rule 56.[1] This matter arises as an appeal of Administrative Law Judge Kimberly A. Moss's ("ALJ Moss") decisions denying Plaintiffs' (i) Cross-Petition for Due Process and (ii) request to file a motion to reconsider. (D.E. 1 ¶ 5.) This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. §1415(i)(2). Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Plaintiffs' Motion is **DENIED** and Defendant's Cross-Motion is **GRANTED**.

---

[1] Plaintiffs filed a moving brief in support of their Motion for Summary Judgment on February 22, 2021 (D.E. 10); however, they docketed a Notice of Motion on March 23, 2021 (D.E. 16). On the same day, Plaintiffs re-filed their moving brief (D.E. 14), and submitted amended exhibits with numeric labeling to coincide with citations in their brief. (*See, e.g.*, D.E. 14-1.) As a result of Plaintiffs' disjointed filings, this Court notes that it considers and cites to Plaintiffs' initial moving brief (D.E. 10) and Plaintiffs' amended exhibits appended to Docket Entry Number 14. In addition, this Court cites to the document filed as Defendant's "[Cross-]Motion for Summary Judgment" (D.E. 19), which is identical to its submission entitled "Brief in Opposition" (D.E. 18), filed on the same day.

## I. BACKGROUND

Before turning to the Motion, this Court provides a brief overview of the Individuals with Disabilities Education Act ("IDEA") to contextualize the factual and procedural record. The IDEA was enacted to ensure that children with disabilities receive a free appropriate public education ("FAPE") and are not placed "in regular classrooms awaiting the time when they were old enough to drop out." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179 (1982) (discussing the history of the IDEA) (internal quotations omitted). "The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide." *P.P. ex rel. Michael P. v. W. Chester Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). Under the IDEA, local education agencies are required to (1) identify children in need of special education services, and (2) provide them with a FAPE. *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012). A FAPE "consists of educational instruction specially designed to meet the unique needs of the . . . child, supported by such services as are necessary to permit the child to 'benefit' from the instruction."[2] *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003) (quoting *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir. 1995)); *see also Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004) (discussing FAPE requirements).

The administrative process delineated under the IDEA "provide[s] parents with an avenue to file a complaint and to participate in an impartial due process hearing with respect to 'any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision

---

[2] A FAPE is provided by way of an "individualized education program" ("IEP"). *See* 20 U.S.C. § 1414(d); *Shore Reg'l*, 381 F.3d at 198. "The education provided must 'be sufficient to confer some educational benefit'" upon the student. *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577–78 (3d Cir. 2000) (noting that IEPs "must provide 'significant learning' and confer 'meaningful benefit' as 'gauged in relation to a child's potential'").

of a [FAPE] to such child . . . .'" *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (quoting 20 U.S.C. § 1415(b)(6)(A)).

## II. FACTUAL AND PROCEDURAL HISTORY[3]

E.G. was born in September 2010 to her parents, I.G. and I.G, and is eligible for special education and related services under the IDEA with a classification of "Other Health Impaired." (D.E. 10 at 1; D.E. 18 at 5; Ex. 1 at 2.) E.G. and her parents reside in Linden, New Jersey, making the Linden School District ("District") responsible for providing E.G. a FAPE. (D.E. 10 at 2; D.E. 18 at 5; *see* Ex. 1 at 2.) Plaintiffs enrolled E.G. in the District for at least part of the 2017–2018 academic year, after moving from New York where E.G. previously attended school with an IEP. (D.E. 10 at 2; Ex. 1 at 2; *see* D.E. 18 at 5.) E.G. finished the 2017–2018 school year in the District; however, Plaintiffs never informed the District that E.G. would not return for the 2018–2019 calendar year.[4] (D.E. 18 at 5; Ex. 1 at 2; *see* D.E. 10 at 2.)

In April 2019, Plaintiffs applied to the Sinai School ("Sinai") on E.G.'s behalf, where she was accepted in mid-June 2019. (Ex. 1 at 3; D.E. 18 at 5.) On July 1, 2019, E.G.'s mother notified a District representative of her intent to reenroll E.G. in the District. (D.E. 10 at 2–3; Ex. 1 at 3; Ex. 3 at 2.) Meanwhile, on July 9, 2019, E.G. was enrolled at Sinai and Plaintiffs entered a tuition agreement with Sinai for the 2019–2020 academic year. (D.E. 10 at 3; D.E. 18 at 5; Ex. 1 at 3.)

---

[3] Notably, neither party submitted a statement of material facts with separately numbered paragraphs in support of their Motions for Summary Judgment as required by Local Civil Rule 56.1(a). Accordingly, this Court summarizes the undisputed facts from the parties' briefs and the administrative record, particularly the procedural history outlined in ALJ Moss's July 24, 2020 Decision (D.E. 14-1 ("Ex. 1")). Although Plaintiffs fail to reiterate certain events in their brief, they also do not dispute the facts as summarized below. (*See generally* D.E. 10.) In addition, this Court cites to the CM/ECF pagination automatically generated in the upper-righthand corner for the following exhibits: the ALJ's July 29, 2020 Decision (D.E. 14-2 ("Ex. 2")), and Docket Entry Numbers 14-3 ("Ex. 3"), 14-4 ("Ex. 4"), 14-6 ("Ex. 6"), 14-8 ("Ex. 8"), 14-9 ("Ex. 9"), 14-12 ("Ex. 10"), and 14-14 ("Ex. 12").

[4] For background, the District conducted an IEP meeting and reevaluation planning session in December 2017 following E.G.'s transfer. (Ex. 1 at 2; Ex. 8 at 15; D.E. 18 at 5.) E.G. underwent new evaluations in early 2018, and a new IEP was proposed. (Ex. 1 at 2; D.E. 18 at 5.) E.G. was enrolled in the Joseph Kushner Hebrew Academy ("Kushner"), an out of district private placement, sometime in 2018. (Ex. 1 at 2; *see* D.E. 18 at 5.)

Plaintiffs' agreement contained a clause stating that Sinai would refund tuition if Plaintiffs provided an agreement with the District reflecting their acceptance of E.G.'s FAPE by October 15, 2019 ("Escape Clause"). (D.E. 10 at 3; Ex. 1 at 3.) Between July 10 and July 11, 2019, E.G. was enrolled in the District. (D.E. 10 at 3; D.E. 18 at 6; Ex. 1 at 3.)

Shortly after July 11, 2019, Samantha Palmieri was assigned as E.G.'s case manager by the District. (Ex. 1 at 3; Ex. 6 at 11.) Ms. Palmieri and E.G.'s mother exchanged some emails in early August 2019, in which Ms. Palmieri attempted to gain additional information about E.G. from Kushner in advance of an IEP meeting. (Ex. 6 at 6–11; *see* Ex. 1 at 3–4; D.E. 18 at 6; *see also* D.E. 10 at 3.) E.G.'s mother ultimately attended an IEP meeting on August 14, 2019, and a draft IEP was proposed. (D.E. 10 at 3–4; D.E. 18 at 6; Ex. 1 at 3–4; Ex. 6 at 32, 13–30.) Two days later, counsel notified the District that Plaintiffs rejected E.G.'s proposed IEP. (D.E. 10 at 4; D.E. 18 at 6–7; Ex. 1 at 4; Ex. 6 at 34–36.) Counsel also stated that Plaintiffs request "place[ment] and /or reimburse[ment] . . . for the accredited SINAI school . . . . Should the [D]istrict not be amenable to doing so [Plaintiffs] will unilaterally place her there and seek full reimbursement, transportation, etc." (Ex. 6 at 34.) Furthermore, counsel's correspondence did not explain why Plaintiffs rejected the proposed IEP from August 14, 2019. (*See* Ex. 6 at 34; Ex. 1 at 4.)

After Plaintiffs asked Defendant to complete independent evaluations for E.G. in October 2019 (Ex. 8 at 116), Defendant filed a Due Process Petition ("Petition") to deny Plaintiffs' request. (*See* Ex. 12 at 72.) Plaintiffs responded by filing an Answer and Cross-Petition for Due Process ("Cross-Petition"). (D.E. 10 at 5; D.E. 18 at 8; *see* Ex. 9.) Defendant's Petition was resolved by way of settlement on January 9, 2020 and subsequently withdrawn. (Ex. 12 at 72–73.) On July 24, 2020, after hearing oral argument (*see* Ex. 10), ALJ Moss granted Defendant's Motion for Summary Decision and dismissed Plaintiffs' Cross-Petition. (Ex. 1.) ALJ Moss subsequently

denied Plaintiffs' request to submit a motion for reconsideration on July 29, 2020. (Ex. 2.)

On February 22, 2021, Plaintiffs filed the instant Motion for Summary Judgment in this matter appealing ALJ Moss's decisions from July 2020. (D.E. 10; D.E. 1 ¶ 5.) Defendant filed a joint opposition and cross-motion for summary judgment on March 23, 2021 and the motions were fully briefed on May 10, 2021. (D.E. 19, 20, 21.)

## III. LEGAL STANDARD

The standard of review "under which this Court considers an appeal of a state administrative decision under the IDEA differs from that governing the typical review of summary judgment." *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 F. App'x 404 (3d Cir. 2003) (internal quotations omitted). Although the district court will conduct an independent review of the case, "due weight" and deference must be given to the factual findings of the administrative agency. *E.I.H. v. Fair Lawn Bd. of Educ.*, 747 F. App'x 68, 71 (3d Cir. 2018) (quoting *S.H.*, 336 F.3d at 270). The Third Circuit has interpreted the due weight requirement to be a "modified de novo review." *S.H.*, 336 F.3d at 270. If the reviewing court disagrees with the administrative agency's factual findings, it must give an explanation as to why. *Id.* "[T]he court must explain why it does not accept the ALJ's findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." *Id.* In addition, if the reviewing court finds factual conclusions contrary to that of the ALJ's without hearing any additional evidence, it must point to evidence in the record before it for support. *Id.* On a motion for summary judgment, when no new evidence is presented to the district court, the motion becomes "the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *M.A.*, 202 F. Supp. 2d at 359 (quoting *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997)). Finally, review of the ALJ's "conclusions of law are subject

to plenary review." *E.I.H.*, 747 F. App'x at 71.

## IV. DISCUSSION

Here, ALJ Moss dismissed Plaintiffs' Cross-Petition because they failed to act reasonably by "not collaborat[ing] with the District to resolve the issues" pertaining to E.G.'s FAPE. (Ex. 1 at 6–7.) After thoroughly reviewing the record and the parties' briefing, this Court agrees with ALJ Moss's finding and therefore affirms her decisions dated July 24, 2020 and July 29, 2020.

### A. ALJ Moss's July 24, 2020 Decision

"If parents believe that the school district is not providing a FAPE for their child, they may unilaterally remove [her] from the school, enroll [her] in a different school, and seek tuition reimbursement for the cost of the alternative placement." *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013); 20 U.S.C. § 1412(a)(10)(C)(ii). Notably, "[e]ven where a [d]istrict is found to be in violation of the IDEA and private school placement is deemed appropriate, 'courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant.'" *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 71 (3d Cir. 2010) (quoting *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009)). Under the IDEA and Section 6A:14-2.10 of the New Jersey Administrative Code, reimbursement for a child's unilateral placement in a private school may be reduced or denied for any of the following reasons: "(1) the parents did not inform the district at the most recent IEP meeting that they were [rejecting the IEP or their intention to enroll the child in an out of district placement] . . .; (2) the parents failed to provide written notice to the district at least 10 business days prior to removal of their intent to unilaterally remove the student and seek reimbursement; (3) the district proposed a reevaluation prior to the removal and the parents did not make the student available for reevaluation; or (4) a judicial body finds the parental actions unreasonable." *W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, No. 13-3423, 2014 WL

6

793459, at *2 (D.N.J. Feb. 26, 2014), *aff'd*, 602 F. App'x 563 (3d Cir. 2015) (citing 20 U.S.C. § 1412(a)(10)(C)(iii)); *accord J. F. v. Byram Twp. Bd. of Educ.*, 812 F. App'x 79, 81 (3d Cir. 2020) (citing N.J. Admin. Code § 6A:14-2.10(c)).

ALJ Moss appropriately concluded that Plaintiffs did not act reasonably because the timeline of relevant events and Plaintiffs' few communications with Defendant reflect their noncollaboration. For example, during the relevant period, E.G.'s mother met with Defendant once at the August 14, 2019 IEP meeting and did not reject the proposed IEP at this juncture. (Ex. 6 at 32; Ex. 1 at 7.) Merely two days after the IEP meeting, Plaintiffs, through counsel, affirmatively stated that they would not accept any placement for E.G. other than Sinai.[5] (Ex. 6 at 36 (requesting "place[ment] and /or reimburse[ment] . . . for the accredited SINAI school . . . . [and] [s]hould the district not be amenable to doing so [Plaintiffs] will unilaterally place her there and seek full reimbursement, transportation, etc."); Ex. 1 at 6–7.) This notion is captured further by the fact that Plaintiffs *already* had enrolled E.G. at Sinai despite counsel's representation that Plaintiffs "*will* unilaterally place [E.G.]" at Sinai in the future. (Ex. 6 at 36 (emphasis added); Ex. 1 at 6–7.) Furthermore, Counsel's correspondence did not state Plaintiffs' basis for rejecting the August 14, 2019 proposed IEP. (*See* Ex. 6 at 34–36; Ex. 1 at 7.)

Importantly, Plaintiffs provide no arguments, rationale, or evidence to rebut ALJ Moss's conclusion that they failed to collaborate with Defendant and therefore acted unreasonably. (*See generally* D.E. 10; D.E. 20 (representing, but ultimately failing to support, that Plaintiffs corresponded with Defendant by "numerous letters and phone calls").) Indeed, Plaintiffs do not offer a scintilla of evidence to rebut the assertion that they failed to communicate with Defendant

---

[5] While Plaintiffs maintain that their tuition agreement with Sinai included an Escape Clause (*see* D.E. 10 at 9–10, 12 n.20; D.E. 20 at 2), counsel's correspondence effectively rendered said clause meaningless. Plaintiffs rejected the August 14, 2019 IEP and presented Defendant with one alternative—Sinai. (*See* Ex. 6 at 34–36.)

7

during the entire 2018–2019 academic year, which undoubtedly is relevant to the reasonableness inquiry. (*Compare* D.E. 10 *and* D.E. 20 at 6, *with* D.E. 18 at 5 *and* Ex. 1 at 2.) Similarly, while Plaintiffs stress that ALJ Moss did not hear testimony (*see* D.E. 10 at 5, 9 n.18, 11 n.5; D.E. 20 at 5–7), Plaintiffs present no substantive evidence that they intended to glean had a hearing occurred.[6]

Because "[t]he record here reflects that Plaintiffs failed to participate in a collaborative process with Defendant," *see J. F.*, 812 F. App'x at 82, Plaintiffs "have disregarded their obligation to cooperate and assist in the formulation of an IEP." *C.H.*, 606 F.3d at 72. Thus, this Court affirms ALJ Moss's July 24, 2020 Decision. *See, e.g.*, *J. F.*, 812 F. App'x at 82 (holding that the district court "did not err in deciding that [plaintiffs] are not entitled to reimbursement," noting that the IDEA was not meant to fund a private placement "when parents [ ] have not first given the public school a good faith opportunity to meet its obligations") (quoting *C.H.*, 606 F.3d at 72).

### B. ALJ Moss's July 29, 2020 Decision

As highlighted by ALJ Moss, "[t]here is no administrative rule addressing motions for reconsideration." (Ex. 2 at 3.) For purposes of the instant Motions, this Court assumes that an ALJ may decide whether to permit motions to reconsider. *But see Y.B. o/b/o S.B. v. Howell Twp. Bd. of Educ.*, No. 18-10950, 2020 WL 1320137, at *3 (D.N.J. Mar. 20, 2020) (commenting that, upon receiving a motion for reconsideration, the ALJ found she did not have authority to reconsider "a final decision in a special education due process matter brought under IDEA" such that her "decision [was] appealable only . . . in either state or federal court"). Even with this assumption, ALJ Moss did not abuse her discretion in declining to consider additional evidence regarding the relationship between Kushner and Sinai. *See Palombi v. Palombi*, 997 A.2d 1139, 1147 (N.J. App. Div. 2010) ("Reconsideration itself is a matter within the sound discretion of the [c]ourt, to be

---

[6] Nor did Plaintiffs specify the substance of what they sought to present when asking ALJ Moss "to hear testimony" in their request to file a motion for reconsideration. (*See* Ex. 12 at 8.)

8

exercised in the interest of justice.") (internal quotations and citation omitted).

In addressing Plaintiff's Cross-Petition, ALJ Moss framed the issues as (i) whether "Kushner and Sinai . . . are the same entity," and (ii) whether Plaintiffs "timely filed a notice of unilateral placement of E.G."[7] (Ex. 1 at 5.) In denying Plaintiffs' request to file a motion to reconsider, ALJ Moss clarified that her ultimate ruling "was *not* based on whether Sinai and Kushner were the same entity." (Ex. 2 at 3) (emphasis added). Although the purported relationship between Sinai and Kushner presented a factual issue below (*see* Ex. 1 at 5), its resolution was not material to the parties' dispute or the final ruling. (Ex. 2 at 3–4.) Because Sinai and Kushner's relations had no bearing on Plaintiffs' failure to act reasonably and collaborate with Defendant as detailed above, ALJ Moss's decision denying Plaintiffs' request to file a motion for reconsideration was not "arbitrary, capricious, or unreasonable." *See Palombi*, 997 A.2d at 1147; *see also Kornbleuth v. Westover*, 227 A.3d 1209, 1216, 1220 (N.J. 2020) (finding no abuse of discretion where plaintiffs "offered no new evidence, citations, or explanation with any tendency to show that the [ ] decision to grant summary judgment was palpably incorrect or irrational" or that there was a failure "to appreciate the significance of probative, competent evidence").

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendant's Cross-Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

                                                          /s/ Susan D. Wigenton
                                          **SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:          Leda D. Wettre, U.S.M.J.
               Parties

---

[7] As outlined above, ALJ Moss's decision rested on Plaintiffs' unreasonableness. (Ex. 1 at 6–7.) Although this Opinion similarly does not hinge on whether Plaintiffs provided proper notice of E.G.'s placement at Sinai, whether such notice satisfied pertinent requirements under the IDEA and New Jersey's Administrative Code remains suspect.